# STATE OF MICHIGAN

# COURT OF APPEALS

In re GIBSON/SHARP, Minors.

UNPUBLISHED
June 29, 2017

No. 334443
Calhoun Circuit Court
Family Division
LC No. 2014-001522-NA

Before: TALBOT, C.J., and BECKERING and M.J. KELLY, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to her two minor children under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continued to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that the child would be harmed if returned to the parent).[1] We affirm.

## I. FACTS

In June 2014, the Department of Health and Human Services (DHHS) petitioned for protective custody of the older child on the basis of multiple domestic violence incidents between respondent-mother and respondent-father. The DHHS also alleged that respondent-mother was not taking medication for her bipolar disorder and had unstable housing. Respondent-mother pleaded responsible to the allegations, and the trial court placed the child with the DHHS for care and supervision.

Respondent-mother's individual counseling focused on domestic violence. Her caseworker testified that being in a domestically abusive environment had the potential to cause physical, mental, and emotional harm to a child. Throughout the pendency of the case, respondent-mother's caseworkers and counselor recommended that she separate from respondent-father. However, respondent-mother continued to have contact with respondent-father and continued to live with him on and off. Significantly, the domestic violence between the two continued. Respondent-mother admitted to police that she had assaulted respondent-father with a frying pan during one incident and had stabbed him during another. At the time of the stabbing, respondent-mother was seven months pregnant with the younger child involved in

---

[1] The trial court also terminated respondent-father's parental rights, but he does not appeal.

-1-

this case. Her caseworker testified that respondent-mother was an active participant in her service plan, but opined that she had not benefitted from it.

In May 2016, the trial court authorized the DHHS to change the children's permanency goal to adoption. The DHHS petitioned to terminate respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j) on the basis of her unstable housing and continued domestic violence with respondent-father. Following a termination hearing, the trial court found that respondent-mother had generally complied with services, but had benefitted very little. The court further found that respondent-mother's therapist had "fully provided accommodations" to address respondent-mother's cognitive issues, and respondent-mother was able to grasp the information presented to her. However, the court concluded, despite two years of services, respondent-mother was not able to consistently apply the lessons she had learned. The court also found that respondent-mother continued to have contact with respondent-father despite the fact that she had obtained a personal protection order against him. Over a year into the case, the court noted, respondent-mother had stabbed respondent-father while she was seven months pregnant with the younger child. The trial court found that respondent-mother was as responsible as respondent-father for the violations of the personal protection order. The court explained:

> [T]here is no reasonable expectation that either Mother or Father will be able to benefit from the services that are available, that have been provided and that could possibly continue to be provided. There's no indication that either parent would be able to benefit from the services to the point where they could be reunified with either child within a reasonable time given the—their history, involvement with the case and given the young ages of the children.

Accordingly, the trial court found that the DHHS had established statutory ground MCL 712A.19b(3)(c)(*i*). It further found that respondent-mother and respondent-father had failed to provide the children with proper care and custody, MCL 712A.19b(3)(g), because they had explosive tempers and failed to benefit from services. With respect to MCL 712A.19b(3)(j), the court found that the risk of harm to either child was "extreme" because the parents' conflicts could become physical and dangerous to the children, noting that dangerous weapons had been involved.[2]

Regarding the children's best interests, the trial court found that the children were placed in a stable home. The younger child had never been in any other home, and the elder child had been in foster care for the majority of the child's life. They were bonded to the foster parents and with other people in the home. They were thriving and were able to do so because "domestic violence isn't the primary backdrop of their childhood." The court concluded that termination would be in the best interests of both children. Therefore, the trial court ordered both parents' parental rights terminated.

---

[2] However, the trial court found that the DHHS did not meet its burden to establish that new or other conditions existed under MCL 712A.193(b)(c)(*ii*).

## II. STANDARDS OF REVIEW

This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination, *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010), as well as the trial court's best-interest determination, *In re Trejo Minors,* 462 Mich 341, 356-357; 612 NW2d 407 (2000). A finding is clearly erroneous if, after reviewing the entire record, this Court has the definite and firm conviction that the trial court made a mistake. *In re Mason*, 486 Mich at 152.

## III. STATUTORY GROUNDS

Respondent-mother argues that the trial court's findings that statutory grounds supported terminating her parental rights were clearly erroneous because she complied with her case service plan.

The DHHS has the burden to prove the existence of a statutory ground by clear and convincing evidence. *In re Mason*, 486 Mich at 166. Clear and convincing evidence is "evidence so clear, direct and weighty and convincing as to enable [the fact-finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995) (quotation marks and citation omitted; alteration added).

MCL 712A.19b(3)(c)(*i*) provides that the trial court may terminate a parent's parental rights if "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." This statutory ground exists when the conditions that brought the children into foster care continue to exist and are not likely to be rectified despite "time to make changes and the opportunity to take advantage of a variety of services . . . ." *In re Powers Minors*, 244 Mich App 111, 119; 624 NW2d 472 (2000).

MCL 712A.19b(3)(g) provides that the trial court may terminate a parent's parental rights if "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."

And MCL 712A.19b(3)(j) provides that the trial court may terminate parental rights if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." A parent's failure to comply with his or her service plan is evidence that the parent will not be able to provide a child with proper care and custody and that the child may be harmed if returned to the parent's home. *In re White*, 303 Mich App 701, 710-711; 846 NW2d 61 (2014).

A parent must both comply with and benefit from a case service plan. See *id.* at 713; *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Services were provided to respondent-mother to address the underlying foundations of her issues with domestic violence, and her caseworker and case supervisor each testified that respondent-mother consistently participated in her case service plan, which the former explained had an emphasis on domestic violence. However, her caseworker testified that respondent-mother had not benefitted from services. In particular, respondent-mother continued to have contact with respondent-father despite his recommendations that they separate.

A therapist working with respondent-mother on her anger and domestic violence issues also testified that respondent-mother did not show much benefit from counseling. Initially, the therapist thought that respondent-mother would be able to regain custody within a reasonable amount of time. However, the therapist indicated that although respondent-mother understood what was required of her, she did not follow through. The therapist explained that she had recommended that respondent-mother end her relationship with respondent-father several times, but respondent-mother did not follow that advice. The therapist also indicated that she undertook joint counseling with respondent-mother and respondent-father, but respondent-mother terminated the joint counseling after one session.

Despite time and the opportunity to engage in a variety of services, including individual counseling focused on domestic violence and tailored to respondent-mother's cognitive abilities, respondent-mother continued to maintain a domestically violent relationship with respondent-father. The trial court did not clearly err when it found that statutory grounds supported terminating respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j).

## IV. BEST INTERESTS

Respondent-mother also argues that the trial court clearly erred by finding that terminating her parental rights was in the children's best interests. To determine whether termination of a parent's parental rights is in a child's best interests, a court should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted).

In this case, the younger child had been in foster care since birth, and the older had been removed from respondent-mother's care and custody when less than 3 months old. See *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011) (stating that the children's young ages and the fact that the oldest child had been in foster care half his life were among the factors that "weighed heavily against additional reunification efforts"). The evidence showed that the children were happy, healthy, thriving in their foster-care home, and bonded with their foster family. The foster parents were interested in adopting them.

The trial court also properly considered the parents' history of domestic violence. *In re White*, 303 Mich App at 714. And there was consistent testimony by several service providers that it was unlikely that the issue of domestic violence would be rectified in a reasonable time. Under these circumstances, it was in the best interests of the children not to continue to languish

in temporary custody. *In re Trejo*, 462 Mich at 351 (The amendments to the law addressing the termination of parental rights enacted by 1994 PA 264 [including the addition of current § 19b(5)] reflected on-going concern that children were languishing indefinitely in the temporary custody of the court.").

Affirmed.

/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Michael J. Kelly